UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SRT ENTERPRISES, INC., for itself individually and on behalf of others similarly situated | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | ) No. 11 CV 4933<br>) |
| DIRECT ENERGY BUSINESS, LLC | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is the motion of defendant Direct Energy Business, LLC ("DEB") to dismiss the complaint filed by Plaintiff SRT Enterprises, Inc. ("Plaintiff"). Plaintiff brings an action for breach of contract and fraud against DEB, an electricity supplier, alleging that DEB billed Plaintiff for undisclosed and excessive charges. Specifically, Plaintiff is suing DEB on behalf of itself and "all persons and entities who have purchased electricity, natural gas, or other services from Direct Energy and who were billed (a) a cancellation or early termination charge by Direct Energy, or (b) a charge classified as a 'Customer Charge,' 'Standard Metering Charge,' 'Distribution Facility Charge,' 'Environmental Cost Recovery Adj.' or 'Energy Efficiency Programs.'" (*Id*. ¶ 21.) DEB contends that Plaintiff failed to state a claim against it because DEB disclosed, and was permitted to charge, the fees at issue. DEB further contends that the complaint should be dismissed because this dispute should be adjudicated in the first instance before the Illinois Commerce Commission ("ICC" or "Commission"). For the reasons set forth below, we grant the motion.

## I. FACTUAL BACKGROUND

In 1997, the Illinois legislature passed the Electric Service Customer Choice and Rate Relief Law ("Rate Relief Act"), as Article XVI of the Illinois Public Utilities Act ("IPUA"), to "introduce competition into the Illinois electricity market." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 328 Ill. App. 3d 937, 939, 767 N.E.2d 504, 506 (2d Dist. 2002); 220 ILCS 5/16-101 *et seq*. The law allowed for the creation of Alternative Retail Electric Suppliers ("ARES"), which are nonutility entities that "may or may not be affiliated with an existing utility company, and [are] authorized to sell and market electricity to customers." *Local Union Nos. 15, 51, 702, IBEW v. Illinois Commerce Comm'n,* 331 Ill. App. 3d 607, 609, 772 N.E.2d 340, 342 (5th Dist. 2002). When a customer contracts with an ARES, a local electric utility still delivers the customer's actual electricity. *Commonwealth Edison Co.,* 328 Ill. App. 3d at 939, 767 N.E.2d at 506.

Plaintiff is an Illinois corporation with its principal place of business in Chicago, Illinois. (Compl. ¶ 4.) DEB, a limited liability company with its principal place of business in Pennsylvania, is an ARES that supplies electricity in Illinois and other states.[1] (*Id*. ¶ 5.) In February 2009, Plaintiff received a telephone call from a DEB representative offering to supply Plaintiff's electricity at a rate of $0.75 per kilowatt hour. (*Id*. ¶ 9.) According to Plaintiff, DEB claimed that would be less expensive than the rate offered by ComEd, Plaintiff's electricity supplier at the time. (*Id*.) On February 26, 2009, Plaintiff and DEB entered into a Power Supply Coordination Service Agreement ("Agreement"). (*Id*. ¶ 10.) The Agreement was for a term of 24 months and listed the price as $0.75 per kilowatt hour. (*Id*.) The Agreement included

---

[1] The parties do not dispute that DEB is an ARES. (Mem. at 2; Pl.'s Opp'n. at 9.)

2

sections on "Price," "Billing and Payment," "Termination," and "Effect of Termination." (*Id.* ¶¶ 11–13.) As to the price, the Agreement stated: "The Price shall not include any charges for delivery services provided by the Host Utility; however…. charges from the Host Utility for any delivery service charges shall also be included upon the Direct Energy invoice." (*Id.* ¶ 11.)

In June 2009, Plaintiff cancelled its service with DEB because DEB's invoice to Plaintiff included charges that were allegedly undisclosed in the Agreement. (*Id.* ¶ 15.) Plaintiff also asserts that DEB charged undisclosed and excessive early termination and late payment charges. (*Id.* ¶¶ 19–20.)

Based on these allegations, Plaintiff brings two causes of action. The first cause of action is for breach of contract. Plaintiff accuses DEB of breaching the Agreement "by charging Plaintiff and class members for items above and beyond the quoted kilowatt per hour charge." (*Id.* ¶ 33.) In particular, Plaintiff claims that DEB charged for items supposedly included in the price, as well as for items that were not disclosed in the Agreement at all. (*Id.* ¶¶ 33–35). The second cause of action alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). 815 ILCS 505/1 *et seq*. Plaintiff contends that DEB violated the ICFA by billing for charges that were not disclosed to Plaintiff and not included in the Agreement. (*Id.* ¶ 41.) Moreover, Plaintiff argues, the early cancellation charge is "so excessive as to constitute an unfair and deceptive practice within the ICFA." (*Id.* ¶ 43.)

Plaintiff seeks to "stop these deceptive billing practices and use of unlawful cancellation charges" and to recover "all undisclosed and unenforceable charges collected by Direct Energy." (*Id.* ¶ 3). Plaintiff thus seeks an injunction, compensatory and punitive damages, and attorneys' fees and costs. (*Id.* at 10.) In its motion, DEB contends that the disputed fees were lawful and

3

disclosed in the Agreement. (Mem. at 2.) DEB further argues that we lack jurisdiction over this dispute over "rates and fees charged by DEB or ComEd . . . which are subject to the regulating authority of the Commission or within its specific expertise." (*Id.*)

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) and (b)(6) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009) (stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776–77 (7th Cir. 2007). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal,* 127 S. Ct. at 1949–50; *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602–03 (7th Cir. 2009); *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996). A

plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor,* 826 F.2d 573, 576 (7th Cir. 1987).

**III. ANALYSIS**

While Plaintiff frames its complaint as an action for breach of contract and fraud, the complaint raises issues reserved for the jurisdiction of the ICC. First, the ICC has exclusive jurisdiction over whether DEB complied with the requirements for ARES as set out in the IPUA. 220 ILCS 5/16-115B. In particular, the ICC has jurisdiction "to entertain and dispose of complaints concerning the terms of a contract for utility service between an ARES and a customer." *Chiku Enter. Inc. v. GDF SUEZ Energy Res. NA Inc.*, 10-0157, 2011 WL 1474049 (Ill.C.C. Apr. 12, 2011). Second, the ICC has jurisdiction under the IPUA to hear Plaintiff's complaint, whether the charges are DEB's or ComEd's. As such, we need not resolve whether the charges at issue are attributable to DEB or ComEd.

**A. The Illinois Commerce Commission has jurisdiction to hear complaints that DEB violated its obligations as an ARES.**

DEB correctly asserts that the ICC has jurisdiction over complaints that an ARES violated its obligations under the IPUA. (Mem. at 12.) Under the IPUA, an ARES can only enter the Illinois market if it shows that it meets certain requirements set forth in the Rate Relief Act and the ICC issues a certificate of authority to the ARES. 220 ILCS 5/16-115(d). Once the ARES is certified, the ICC has jurisdiction to hear a variety of complaints against the ARES, including: "any complaint against any [ARES] alleging (I) that the [ARES] has violated or is in nonconformance with any applicable provisions of Section 16-115 through Section 16-115A,

5

[or] (iii) that the [ARES] has violated or is in non-conformance with the delivery services tariff of, or any of its agreements relating to delivery services with, the electric utility." 220 ILCS 5/16-115B(a).

Under § 5/16-115B, the ICC has jurisdiction to hear "complaints concerning the terms of a contract for utility service between an ARES and a customer." *Chiku Enter. Inc.,* 2011 WL 1474049. For example, the ICC could hear a complaint that, before a customer switched from another supplier, the ARES should have given the customer "written information that adequately discloses, in plain language, the prices, terms and conditions of the products and services being offered and sold to the customer." 220 ILCS 5/16-115A(e)(ii); 220 ILCS 5/16-115B(a). The ICC also has jurisdiction to hear a complaint that an ARES failed to adequately disclose in its marketing materials "the prices, terms and conditions of the products or services." 220 ILCS 5/16-115A(e)(i). According to the ICC, this provision applies to an ARES's description of price or pricing methodology "during sales activities." *Integrys Energy Serv.'s, Inc*., 09-0165, 2009 WL 4226886 (Ill.C.C. Nov. 12, 2009). Finally, the ICC has jurisdiction to hear a complaint that an ARES did not provide service according to the terms of the customer's contract. 220 ILCS 5/16-115B(a)(ii).

Accordingly, Plaintiff's complaint raises issues reserved for the ICC's jurisdiction related to ARESs. While Plaintiff broadly states that it never alleged that DEB violated any provisions of the IPUA or its derivative Rate Relief Act, (Pl.'s Opp'n. at 9), Plaintiff's allegations fall squarely within the ICC's jurisdiction under the Rate Relief Act. Indeed, Plaintiff's breach of contract and consumer fraud actions are both based on allegations that DEB did not disclose in the Agreement that it would charge Plaintiff certain fees. (Compl. ¶¶ 33–42.) Plaintiff further

6

emphasizes that it "had no notice it would be charged for any of [the disputed] items when it was induced to switch service providers and entered into the Agreement." (Pl.'s Opp'n. at 7.) As these allegations are clearly included in the language stated above, we conclude that Plaintiff's challenge to DEB's charges and early termination fee is reserved for the jurisdiction of the ICC.

**B. Whether the charges at issue are DEB's or ComEd's, this dispute is reserved for the jurisdiction of the ICC.**

The parties dispute whether the charges at issue were actually the local utility's, ComEd's, service charges. (Mem. at 4, 10; Pl.'s Opp'n. at 5.) It is undisputed that DEB supplies the electricity and ComEd delivers the electricity, (Mem. at 7), and that rates for the delivery of electricity are calculated separately from the rates for the supply of electricity. *Commonwealth Edison v. Illinois Commerce Comm'n,* 405 Ill. App. 3d 389, 394, 937 N.E.2d 685, 672 (2d Dist. 2010). It is also clear that the early termination fee is DEB's charge. But it is unclear whether the other allegedly undisclosed and excessive charges are DEB's or ComEd's. According to Plaintiff, the charges were all imposed by DEB. (Pl.'s Opp'n. at 7–9.) Plaintiff appears to make this argument to support its contention that it has not brought a claim under the IPUA or the Rate Relief Act. (*Id.*) However, if we infer that all disputed charges are DEB's, then, as described above, the ICC has jurisdiction over Plaintiff's complaint that DEB violated its obligations as an ARES. Further, even if the charges are imposed by ComEd, the ICC has jurisdiction under the IPUA to hear Plaintiff's complaint.

Under the IPUA, a public utility must file a schedule of proposed rates with the ICC before providing services. *New Landing Util., Inc. v. Illinois Commerce Comm'n,* 58 Ill. App. 3d 868, 872, 374 N.E.2d 6, 9 (2d Dist. 1978); 220 ILCS 5/9-102. If the utility's rates are

7

challenged, the ICC has the authority to determine if the rates are just, reasonable, and nondiscriminatory. *Technical Loss Serv.'s Inc. v. American Tel. & Tel. Co.*, 138 F. Supp. 2d 1075, 1078 (N.D. Ill. 2001); *Sheffler v. Commonwealth Edison Co.*, 399 Ill. App. 3d 51, 61, 923 N.E.2d 1259, 1268 (5th Dist. 2010), *aff'd*, 2011 WL 2410366 (Ill. June 16, 2011). In fact, the ICC has primary and exclusive jurisdiction[2] over complaints of excessive rates or overcharges by public utilities. *Technical Loss Serv.'s Inc.*, 138 F. Supp. 2d at 1078. Moreover, Illinois courts generally interpret the ICC's jurisdiction broadly since the IPUA refers to rates or "other charge of any public utility," and "rate" is defined to include practices and contracts relating thereto. 220 ILCS 5/9-252; *Sheffler*, 399 Ill. App. 3d at 69, 923 N.E.2d at 1275 (citations omitted); *Vill. of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813, 695 N.E.2d 1339, 1341 (1998). Courts, on the other hand, have jurisdiction over these matters only on administrative review. *Technical Loss Serv.'s Inc.*, 138 F. Supp. 2d at 1078.

Therefore, even if some of the charges at issue are ComEd's, the ICC has jurisdiction. If Plaintiff challenges ComEd's rate itself, then the ICC has jurisdiction to hear the complaint that ComEd charged too much for the service provided. *Vill. of Apple River,* 18 Ill. 2d at 523, 165 N.E.2d at 332. Pursuant to the IPUA, ComEd filed, and the ICC approved, a delivery services tariff that includes ComEd's intended charges for the delivery of electricity supplied by ARESs.

---

[2] Exclusive jurisdiction (also referred to as the filed rate doctrine) applies "where a claim is cognizable in the first instance by an administrative agency alone." *U.S. v. Western Pacific R.R.*, 352 U.S. 59, 63, 77 S. Ct. 161, 165 (1956). In other words, it applies "in suit involving a regulated firm but not brought under the regulatory statute itself, [where] an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). Primary jurisdiction "allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to resolve it." *Id*.

*MidAmerican Energy Co. v. Utility Res. Corp.*, No. 03 C 2313, 2003 WL 22359526, at *1 (N.D. Ill. Oct. 15, 2003); *Commonwealth Edison*, 328 Ill. App. 3d at 940; 220 ILCS 16-118(b). Accordingly, a complaint about ComEd's service charges is a challenge to ComEd's ICC-approved tariff. *Adams v. N. Illinois Gas Co.*, 211 Ill. 2d 32, 55, 809 N.E.2d 1248, 1263 (Ill. 2004) (a tariff "binds both the utility and the customer and governs their relationship"). Such a complaint would fall under the ICC's jurisdiction to hear complaints concerning rates, a utility's practices and contracts related to rates, and complaints of excessive rates or overcharges by a utility. *Sheffler*, 399 Ill. App. 3d at 63; *see* 220 ILCS 5/3-116 (defining rate as "every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility . . . and any rule, regulation, charge, practice or contract relating thereto").

**C. Judicial estoppel is not appropriate**.

Finally, Plaintiff argues that DEB should be judicially estopped from asserting that the ICC has primary jurisdiction because DEB did not make that argument in state court, and instead removed to this court under the Class Action Fairness Act ("CAFA"). (Pl.'s Opp'n. at 4, 12.) Where a party removes a case to federal court, that party does not automatically consent to jurisdiction or defeat its own motion or defense. *See* Charles Alan Wright & Arthur Miller, 7 *Federal Practice & Procedure* § 3738 (4th ed. 2010) (collecting cases). Moreover, even if we were to waive DEB's primary jurisdiction argument, DEB's argument that the ICC has exclusive jurisdiction stands. We lack jurisdiction to decide this case because the ICC has exclusive jurisdiction over this dispute, and no action taken by the parties can affect that.[3]

**IV. CONCLUSION**

---

[3] Because Plaintiff should have first brought its complaint to the ICC, we cannot reach the issues of whether DEB breached its contract or violated the ICFA.

For the reasons stated above, we grant DEB's motion to dismiss. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: December 20, 2011